UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SOUTHERN-OWNERS INSURANCE
COMPANY,

       Plaintiff,

v.                           Case No:  2:18-cv-21-FtM-29MRM

MAC CONTRACTORS OF FLORIDA,
LLC       d/b/a       KJIMS
Construction,     PAUL     S.
DOPPELT, Trustee of Paul S.
Doppelt   Revocable   Trust
dated 12/08/90, and DEBORAH
A.   DOPPELT,   Trustee   of
Deborah A. Doppelt Revocable
Trust dated 12/08/90,

       Defendants.

_____

**OPINION AND ORDER**

     Southern-Owners Insurance Company (Southern-Owners) issued
two commercial general liability insurance policies to MAC
Contractors of Florida, LLC, d/b/a KJIMS Construction (KJIMS).[1]
During the relevant time period KJIMS was sued for breach of

_____

     [1] Policy number 20723985 had effective dates of October 8,
2014 to October 8, 2015 (the "2014-15 CGL Policy") (Docs. ##84-1,
97-4), while Policy number 20723985 had effective dates of October
8, 2015 to October 8, 2016 (the "2015-16 CGL Policy") (Docs. ##84-
1, 97-5) (collectively "the CGL Policies"). For the same time
periods, Southern-Owners also insured KJIMS under two Commercial
Umbrella policies, policy number 48-172-892-00, which provided
excess coverage. (Doc. #84-2.) Neither party disputes the
authenticity of the CGL Policies submitted in the record, and the
two CGL Policies contain identical relevant provisions.

contract in a state court lawsuit brought by Paul and Deborah Doppelt, styled <u>Doppelt et al. v. MAC Contractors of Florida, LLC d/b/a KJIMS Construction</u>, No. 2016-CA-1530 (the "Doppelt Action"). Southern-Owners temporarily provided a defense to KJIMS under the CGL Policies, but then declined to provide further defense. The Doppelt Action has recently been settled for $70,000 and the case dismissed.

Southern-Owners' Second Amended Complaint (Doc. #84), the operative pleading in this case, seeks a declaration that the CGL Policies provided no coverage for defense or indemnity of the Doppelt Action. Specifically, Southern-Owners seeks a declaration that it had no duty to defend KJIMS in the Doppelt Action (and therefore no duty to indemnify) because: (1) the allegations in the Doppelt Action's Amended Complaint do not bring the breach of contract claim within the scope of the general coverage provision of the CGL Policies since there are no allegations of an "occurrence" or of otherwise covered "property damage" which would cause the Doppelt Action to constitute a "suit" under the policies (Doc. #84, ¶ 19); (2) even if the claim in the Doppelt Action was within the scope of coverage, four exclusions apply to preclude coverage: (a) the entire property is excluded from coverage since it meets the definition of "your work" within the meaning of Exclusion l. Damage To Your Work (the "your work" exclusion) (<u>Id.</u> at ¶ 20); (b) any alleged failures by KJIMS with respect to the

performance of its work and any purely economic injuries are excluded by Exclusion b. Contractual Liability (<u>Id.</u> at ¶ 21); and (c) any claimed damages based upon ongoing operations are excluded from coverage by Exclusion j(6) and (7), Damage To Property. (<u>Id.</u> at ¶ 22.)

KJIMS filed an Amended Counterclaim (Doc. #97) seeking a declaration that Southern-Owners <u>was</u> obligated to defend (and indemnify) KJIMS under the CGL Policies because the Doppelt Action's original and Amended Complaints sufficiently alleged "property damage" within the meaning of the CGL Policies, and no exclusion completely barred coverage. KJIMS also asserted that Southern-Owners must reimburse it for its costs of defense and the $70,000 paid to settle the Doppelt Action.

Southern-Owners responded in part by re-asserting the positions from its Second Amended Complaint as an affirmative defense. (Doc. #98, p. 6 "Second Defense.") Additionally, Southern-Owners asserted that, should the Court determine there was a duty to defend the Doppelt Action, Southern-Owners can have no indemnity obligation for the Doppelt Action settlement amount because there was no allocation of the settlement proceeds between covered and non-covered damages. (<u>Id.</u> at pp. 7-8 "Fifth Defense.")"

**I.**

The matter is now before the Court on cross motions for summary judgment (Docs. ##103, 104) to which Responses (Docs. ##107, 108) in opposition have been filed.  Southern-Owners seeks summary judgment on its duty to defend and its duty to indemnify, while KJIMS seeks partial summary judgment on the duty to defend issue.

A court may grant summary judgment only if satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it goes to "a legal element of the claim under the applicable substantive law" and thus may impact the case's outcome.  <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004).

For the reasons below, the Court grants declaratory judgment in favor of Southern-Owners as to the lack of a duty to defend issue (and therefore a lack of duty to indemnify).  The Court denies KJIMS's motion for declaratory judgment.

**II.**

Southern-Owners first asserts that there was no coverage under the CGL Policies, and therefore it had no duty to defend

KJIMS in the Doppelt Action. KJIMS responds that there was coverage, and therefore a duty to defend was established.

### A. Relevant Legal Principles

#### (1) Florida Law Applies

In a diversity action such as this, the Court must apply the "substantive law of the forum state." Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). Thus, the Court applies Florida substantive law in this case. Amerisure Mut. Ins. Co. v. Auchter Co., 673 F.3d 1294, 1300 (11th Cir. 2012).

#### (2) Duty to Defend Legal Standard

"It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." Jones v. Florida Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 442–43 (Fla. 2005) (citations omitted). See also Hallums v. Infinity Ins. Co., 945 F.3d 1144, 1148-49 (11th Cir. 2019). Additionally,

> [e]ven where the complaint alleges facts partially within and partially outside the coverage of a policy, the insurer is nonetheless obligated to defend the entire suit, even if the facts later demonstrate that no coverage actually exists. And, the insurer must defend even if the allegations in the complaint are factually incorrect or meritless. As such, an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy.

> Furthermore, once a court finds that there is
> a duty to defend, the duty will continue even
> though it is ultimately determined that the
> alleged cause of action is groundless and no
> liability is found within the policy
> provisions defining coverage.

Advanced Sys., Inc. v. Gotham Ins. Co., 272 So. 3d 523, 527 (Fla.

3d DCA 2019) (internal punctuation and citations omitted.)  "In

short, [the insurer] was required to offer a defense in the

underlying action unless it was certain that there was no coverage

for the damages sought . . . in the [underlying] action."

Carithers v. Mid-Continent Cas. Co., 782 F.3d 1240, 1246 (11th

Cir. 2015).

### (3)  Determination Based on Allegations in Complaint

With certain exceptions not applicable here[2], "[t]he duty to

defend must be determined from the allegations in the complaint."

Jones, 908 So. 2d at 443 (citations omitted).  It is "only the

allegations in the . . . complaint in the underlying action" which

---

[2] See Higgins v. State Farm Fire & Cas. Co., 894 So. 2d 5, 10
n.2 (Fla. 2004)(exception to the general rule applies "where an
insurer's claim that there is no duty to defend is based on factual
issues that would not normally be alleged in the underlying
complaint."); Diamond State Ins. Co. v. Florida Dep't of Children
& Families, ___ So. 3d ___ , 44 Fla. L. Weekly D2624 (Fla. 3d DCA
Oct. 30, 2019)(exception satisfied where issues are in existence
and exhaustion of policy limits); Stephens v. Mid-Continent Cas.
Co., 749 F.3d 1318, 1323 (11th Cir. 2014) ("Florida courts have
found, however, that in special circumstances, a court may consider
extrinsic facts if those facts are undisputed, and, had they been
pled in the complaint, they clearly would have placed the claims
outside the scope of coverage.").

are considered.  <u>Carithers</u>, 782 F.3d at 1245.  <u>See</u> <u>also</u> <u>Biltmore</u> <u>Const. Co., Inc. v. Owners Ins. Co.</u>, 842 So. 2d 947, 949 (Fla. 2d DCA 2003) ("An insurer's duty to defend a complaint depends solely on the allegations in the complaint . . . against the insured.") (citation omitted).

### (4)  Effect of Amended Complaint

Furthermore, "[c]overage is determined from examining the most recent amended pleading, not the original pleading." <u>State</u> <u>Farm Fire & Cas. Co. v. Steinberg</u>, 393 F.3d 1226, 1230 (11th Cir. 2004).  In both Florida and federal practice, an original pleading is superseded by an amended pleading which does not indicate an intention to preserve any portion of the original pleading.  <u>See</u> <u>Oceanside Plaza Condo. Ass'n v. Foam King Indus., Inc.</u>, 206 So. 3d 785, 787 (Fla. 3d DCA 2016) ("Long-standing Florida case law makes clear that the filing of an amended complaint constitutes an abandonment of the original complaint which was superseded, [and it] ceased to be part of the record and could no longer be viewed as a pleading.") (punctuation and citations omitted).  As stated in <u>Hoefling v. City of Miami</u>,

> As a matter of law, the second amended complaint filed by Mr. Hoefling "supersede[d] the former pleading[s]; the original pleading[s] [were] abandoned by the amendment, and [were] no longer a part of [Mr. Hoefling's] averments against his adversar[ies]." <u>Dresdner Bank AG v. M/V Olympia Voyager</u>, 463 F.3d 1210, 1215 (11th Cir. 2006). So when Mr. Hoefling filed the

> second amended complaint, the first amended
> complaint (and its attached exhibits) became
> a legal nullity.

Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016).

"The question of duty to defend is answered based upon a review of the underlying pleadings filed against the insured as well as the insurance policy itself.  In cases where pleadings are amended such that they supersede earlier filings, the amended allegations control the duty to defend issue." Nationwide Mut. Fire Ins. Co. v. Advanced Cooling & Heating, Inc., 126 So. 3d 385, 387 (Fla. 4th DCA 2013) (citations omitted.)

### (5)  Burdens of Proof

"Florida law places on the insured the burden of proving that a claim against it is covered by the insurance policy.  The burden of proving an exclusion to coverage is, however, on the insurer." LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir. 1997) (citation omitted).

### B. The Doppelt Action

In December 2014, KJIMS contracted with the Doppelts to serve as the general contractor in the construction of their residence in Marco Island, Florida on a cost-plus basis.  (Doc. #84-3, ¶¶ 13-16; Exh. A.)  KJIMS did not obtain substantial completion of the construction project, and either abandoned construction or was terminated from further performance by the Doppelts.  (Doc. #84-3, ¶ 14.)  On or about July 12, 2016, the Doppelts served KJIMS

with a Notice of Claim pursuant to Fla. Stat. § 558.01, <u>et. seq.</u>, identifying eighty-six distinct defects that were caused by KJIMS and/or its subcontractors which KJIMS had failed to correct. (Doc. #97-6.) KJIMS asserted that this list of defects was simply punch-list items and failed to cure the alleged defects. The Doppelts asserted that this failure was an anticipatory repudiation and total breach of the contract.

On August 24, 2016, the Doppelts filed a Complaint (Doc. #97-7) in state court against KJIMS for breach of contract. The Notice of Claim was attached as Exhibit B to this Complaint. (<u>Id.</u>, Exh. B.)

KJIMS was served with the original Complaint in the Doppelt Action on September 7, 2016 (Doc. #104-1, ¶ 4) and tendered the Doppelt Action to Southern-Owners for defense and indemnification. Southern-Owners initially accepted the claim and began providing a defense.

On November 17, 2016, the Doppelts filed an Amended Complaint (Docs. ##84-3, 97-8) in state court which continued to assert a one count breach of contract claim. The Amended Complaint stated that the Notice of Claim was attached as Exhibit B and was incorporated into the Amended Complaint. (Doc. #97-8, ¶ 43.) In fact, the Notice of Claim was not so attached.

By letter dated April 10, 2017 (Doc. #104-1), Southern-Owners denied coverage of the claim. After quoting multiple provisions

of the CGL Policies, Southern-Owners stated: "As specified in the policy language, the damages alleged in the complaint are not covered by your insurance." (Id. at p. 22.) The letter advised that coverage would end on May 7, 2017. (Id.) As promised, Southern-Owners ceased providing a defense as of May 7, 2017. (Doc. #104, ¶ 8.)

KJIMS retained its own counsel to defend the Doppelt Action. (Doc. #104-1, ¶ 9.) On January 16, 2018, that attorney sought to withdraw for non-payment of fees. (Id. at ¶¶ 11-12.) On August 19, 2019, the Doppelt Action was settled for $70,000 and that case was dismissed by Order on September 5, 2019. (Doc. #95.)[3]

## C. Scope of Coverage Under CGL Policies

The coverage provided in the CGL Policies is set forth in an "Insuring Agreement" provision of the CGL Policies, along with certain definitions.

### (1) The Insuring Agreement Provision

The "Insuring Agreement" portion of the CGL Policies obligated Southern-Owners as follows:

**1. Insuring Agreement**

---

[3] Unlike Foremost Signature Ins., MI v. Silverboys, LLC, 18-14599, 2019 WL 6522041, at *1 (11th Cir. Dec. 4, 2019), the dismissal of the underlying litigation does not result in this case being moot. The Amended Counterclaim asserts an entitlement to reimbursement of the $70,000 settlement, and KJIMS asserts it incurred expenses by being compelled to hire an attorney after coverage was withdrawn.

> a. We will pay those sums that the insured
> becomes legally obligated to pay as damages
> because of "bodily injury" or "property
> damage" to which the insurance applies. We
> will have the right and duty to defend the
> insured against any "suit" seeking those
> damages. . . .

The "Insuring Agreement" portion of the CGL Policies also provided:

> b. This insurance applies to 'bodily injury'
> and 'property damage' only if:
>
>> (1) The 'bodily injury' or 'property
>> damage' is caused by an 'occurrence' that
>> takes place in the 'coverage territory';
>>
>> (2) The 'bodily injury' or 'property
>> damage' occurs during the policy period;
>> and
>>
>> (3) [Prior to the policy period no
>> insured or employee knew that 'bodily
>> injury' or 'property damage' had
>> occurred] . . .

(Doc. #97-4, p. 47; Doc. #97-5, p. 33, CGL Coverage Form, ¶ 1.)

### (2) Defined Terms of Insuring Agreement

The CGL Policies define the relevant "Insuring Agreement" terms as set forth below.

### (a) Property Damage:

> "Property damage" is defined as:
>
> Physical injury to tangible property,
> including all resulting loss of use of that
> property. All such loss of use shall be
> deemed to occur at the time of the physical
> injury that caused it; or
>
> Loss of use of tangible property that is not
> physically injured. All such loss shall be
> deemed to occur at the time of the
> "occurrence" that caused it.

(Doc. #84-1, Definitions, ¶ 18.)

In <u>Amerisure Mut. Ins. Co. v. Auchter Co.</u>, 673 F.3d 1294, 1300 (11th Cir. 2012), the Eleventh Circuit recognized that two seminal cases by the Florida Supreme Court, <u>United States Fire Insurance Co. v. J.S.U.B., Inc.</u>, 979 So. 2d 871 (Fla. 2007), and <u>Auto-Owners Insurance Co. v. Pozzi Window Co.</u>, 984 So. 2d 1241 (Fla. 2008), controlled the scope of coverage provided by CGL policies issued to general contractors in construction-defect cases. In addressing the definition of "property damage" the Florida Supreme Court drew a distinction "between a claim for the cost of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage.'" <u>J.S.U.B.</u>, 979 So. 2d at 889. "A claim limited to faulty workmanship or materials is one in which the sole damages are for replacement of a defective component or correction of faulty installation." <u>Id.</u> at 889-90 (citation and internal quotation marks omitted). There is no property damage if there is no damage beyond the faulty workmanship unless the faulty workmanship has damaged some otherwise non-defective component of the project. <u>Id.</u> at 889. "Moreover, if a subcontractor is hired to install a project component and, by virtue of his faulty workmanship, installs a defective component, then the cost to

repair and replace the defective component is not 'property damage.'" <u>Pozzi Window Co.</u>, 984 So. 2d at 1248.

After a lengthy discussion of <u>J.S.U.B.</u> and <u>Pozzi</u>, the Eleventh Circuit stated:

> Ultimately, we hold that the Florida Supreme Court has drawn a distinction between "a claim for the cost of repairing the subcontractor's defective work," which is not covered under a CGL policy, and "a claim for repairing the structural damage to the completed [project] caused by the subcontractor's defective work," which is covered. "A claim limited to faulty workmanship or materials," as the <u>J.S.U.B.</u> court illustrated, "is one in which the sole damages are for replacement of a defective component or correction of faulty installation." Because of this principle, there is no coverage "[i]f there is no damage beyond the faulty workmanship," <u>i.e.</u>, unless the faulty workmanship has damaged some "otherwise nondefective" component of the project. Moreover, if a subcontractor is hired to install a project component and, by virtue of his faulty workmanship, installs a defective component, then the cost to repair and replace the defective component is not "property damage." Similarly, nondefective and properly installed raw materials can constitute a defective project component when the contract specifications call for the use of different materials, yet the cost to reinstall the correct materials is not "property damage" — even though the remedy for such a nonconformity is to remove and replace that component of the project. In other words, "unless th[e] defective component results in physical injury to some other tangible property," <u>i.e.</u>, other than to the component itself, there is no coverage.

<u>Auchter Co.</u>, 673 F.3d at 1306–07 (citations omitted.)

**(b)   Occurrence:**

"[O]ccurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. #84-1, Definitions, ¶ 14.)  The term "accident" is not further defined in the CGL Policies.

The Florida Supreme Court has held that the term "accidental," as used in this type of an insurance policy, means unexpected or unintended.  <u>Dimmitt Chevrolet, Inc. v. Southeastern Fid. Ins. Corp.</u>, 636 So. 2d 700, 704 (Fla. 1993).  When not defined in a liability policy, "occurrence" encompasses not only "accidental events" but also injuries or damages neither expected nor intended from the standpoint of the insured.  <u>State Farm Fire & Cas. Co. v. CTC Dev. Corp.</u>, 720 So. 2d 1072, 1076 (Fla. 1998).

**(c)   Suit:**

"Suit" is defined as:

> a civil proceeding in which damages because of
> 'bodily injury', 'property damage', 'personal
> injury' or 'advertising injury' to which this
> insurance applies are alleged. 'Suit'
> includes:
>
>> a. An arbitration proceeding in which
>> such damages are claimed and to which the
>> insured must submit or does submit with
>> our consent; or
>>
>> b. Any other alternative dispute
>> resolution proceeding in which such
>> damages are claimed and to which the
>> insured submits with our consent.

(Doc. #84-1, Definitions, ¶ 21).

**D. Comparison of Coverage Provisions to Doppelt Allegations**

To determine coverage (or exclusion) under the CGL Policies, the Court compares the factual allegations in the complaint with the text of coverage under the policies. <u>Jones</u>, 908 So. 2d at 444. A preliminary issue, however, involves KJIMS's reliance on the original complaint filed in the Doppelt Action.

**(1) Which Pleading May Be Considered**

KJIMS relies on the "eight corners" of the Doppelt Action complaints to establish the duty to defend, <u>i.e.</u>, the language and attachments in both the original Complaint and the Amended Complaint. (Doc. #104, p. 7.) This appears to be because the Notice of Claim attached as Exhibit B to the original Complaint filed in the Doppelt Action was not attached to the Amended Complaint in that action.

An insurer may assume the defense of an action, conduct an investigation, conclude that no coverage exists, and withdraw its defense. <u>Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.</u>, 470 So. 2d 810, 814-15 (Fla. 1st DCA 1985). If an amended pleading is filed, the original complaint can no longer furnish a basis for determining the insurer's duty to defend, which must be determined solely from the amended complaint. <u>Id.</u> at 815. As discussed earlier, the general rule in Florida is that determination of a duty to defend is based upon the amended complaint, not the

original complaint, unless there was an expressed intent to preserve a portion of the original complaint or special circumstances which justify an exception to the general rule.

Neither is the situation in this case. The Amended Complaint makes no reference to the original complaint. No special circumstances exist which would allow reference back to the original Complaint. It is clear that the Court may not consider the allegations in the original Complaint filed in the Doppelt Action, including the Notice of Claim attached as Exhibit B. Unless the Notice of Claim may be considered as part of the Amended Complaint, it may not be considered by the Court in determining the existence of a duty to defend.

As noted above, the Amended Complaint in the Doppelt Action stated that the Notice of Claim was attached and was incorporated into the Amended Complaint. (Doc. #97-2, ¶ 43.) The Court finds that the failure to actually attach the document does not preclude its consideration as part of the Amended Complaint.

> In <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1134 (11th Cir. 2002), we held that the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, "undisputed" means that the authenticity of the document is not challenged. <u>Id.</u> Our prior decisions also make clear that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in

> a complaint and no party questions those
> contents, we may consider such a document
> provided it meets the centrality requirement
> imposed in <u>Horsley</u>. <u>Harris v. Ivax Corp.</u>, 182
> F.3d 799, 802 n.2 (11th Cir. 1999); <u>see also</u>
> <u>In re Silicon Graphics Inc. Securities</u>
> <u>Litigation</u>, 183 F.3d 970, 986 (9th Cir. 1999)
> (same).

<u>Day v. Taylor</u>, 400 F.3d 1272, 1276 (11th Cir. 2005). As with a motion to dismiss, the trial court "must limit itself to the four corners of the complaint, including any attached **or incorporated** exhibits, . . ." <u>Grove Isle Ass'n v. Grove Isle Assocs., LLLP</u>, 137 So. 3d 1081, 1089 (Fla. 3d DCA 2014) (citations omitted; emphasis added)."

Here, the Notice of Claim was expressly incorporated into the Amended Complaint. Additionally, the details of the damages set forth in the Notice of Claim allegedly caused by KJIMS were central to the breach of contract claim for the Doppelts and the declaratory judgment action by both parties in the federal case. The authenticity of the Notice of Claim in not disputed by either party, having been provided to Southern-Owners as an attachment to the original complaint. The Court concludes that the Notice of Claim incorporated (but not attached) to the Amended Complaint in the Doppelt Action may be considered in the determination of Southern-Owners' duty to defend.

**(2) CGL Policies Insuring Agreement Provisions**

Several of the preliminary requirements under the Insuring Agreement are not discussed by Southern-Owners but nonetheless must be established by KJIMS if KJIMS is to prevail on its request for a declaratory judgment that there was a duty to defend. As with all the requirements of the Insuring Agreement provisions, to establish coverage KJIMS must prove that the allegations of the Doppelt Action's Amended Complaint fairly and potentially brought the suit within the CGL Policies coverage. <u>Jones</u>, 908 So. 2d at 442-43.

**(a) Coverage Territory**

The Insuring Agreement requires that the property damage is caused by an occurrence which takes place in the "coverage territory." (Doc. #97-4, p. 47.) "Coverage territory" is defined to include the "United States of America." (Doc. #97-4, p. 58.) The events alleged in the Amended Complaint of the Doppelt Action took place on Marco Island, Florida. Therefore, KJIMS has proven that the allegations of the Amended Complaint fairly and potentially bring the suit within the CGL Policies definition of "coverage territory."

**(b) Policy Period**

The Insuring Agreement requires that the property damage occur during the policy period. (Doc. #97-4, p. 47.) Here, the two annual CGL Policies were in effect from October 8, 2014 through

October 8, 2016. The Amended Complaint implicitly alleges that the damages occurred during the construction of the Doppelts' residence, which began with a contract dated December 19, 2014 (Docs. ##97-3, 97-4, ¶ 17) and ceased on or before July 26, 2016, when a Notice of Claim was served. (Doc. #97-2, ¶ 43.) Therefore, KJIMS has proven that the allegations of the Amended Complaint fairly and potentially bring the suit within the CGL Policies requirement that the damage occur during the policy period.

### (c) Prior Knowledge

The Insuring Agreement requires that no insured or employee knew, prior to the policy period, that property damage had occurred. (Doc. #97-4, p. 47.) The Amended Complaint alleges no such knowledge until approximately July 12, 2016, when KJIMS was served with a Notice of Defect upon refusing to remedy alleged construction defects. Therefore, KJIMS has proven that the allegations of the Amended Complaint fairly and potentially bring the suit within the CGL Policies requirement that no insured or employee knew, prior to the policy period, that property damage had occurred.

### (d) Property Damage

The sufficiency of the allegations as to "property damage" is the crux of the dispute between the parties. As recognized by the Eleventh Circuit, "[i]f the Doppelts did not allege 'property damage,' there is no coverage under the CGL policies, regardless

of any exclusory provision or the timing of damages."
Southern-Owners Ins. Co. v. MAC Contractors of Florida, LLC, 768
F. App'x 970, 974 (11th Cir. 2019).

The Insuring Agreement provides that Southern-Owners will pay
those sums which KJIMS becomes legally obligated to pay as damages
because of "property damage" to which the CGL Policies apply.
(Doc. #97-4, p. 47.) As discussed earlier, "property damage" is
defined as:

> Physical injury to tangible property,
> including all resulting loss of use of that
> property. All such loss of use shall be
> deemed to occur at the time of the physical
> injury that caused it; or
>
> Loss of use of tangible property that is not
> physically injured. All such loss shall be
> deemed to occur at the time of the
> 'occurrence' that caused it.

(Doc. #84-1, Definitions, ¶ 18.)

The Doppelt Action's Amended Complaint alleged breach of the
cost-plus contract involving the repair and replacement of
improper and/or defective materials, improper installation, and
the use of materials that did not comport with building codes
and/or plan specifications. Specifically, paragraph 54 of the
Amended Complaint alleges the following breaches:

> (i) failing to construct the Residence and related
> improvements to the Property according to plans,
> specifications and applicable code;

(ii) demanding payment from Plaintiffs for work not performed, not completed and/or not completed in accordance with the contract plans and specifications;

(iii) failing to timely transmit to Plaintiffs, release of liens from subcontractors, vendors, materialmen and laborers;

(iv) failing to provide access to books and records;

(v) failing to provide evidence of insurance;

(vi) failing to comply with Contractor's assurances of remediation particularly with respect to the damage to wood floors and the metal roof;

(vii) failing to ensure that the outdoor kitchen was manufactured and installed in accord with specifications;

(viii) failing to ensure outdoor kitchen cabinets were measured consistent with approved drawings;

(ix) failing to coordinate subcontractors and completing the construction timely;

(x) anticipatorily repudiating the Cost-Plus Contract by effectively shutting-down construction;

(xi) encouraging sub-contractors to file liens on the Property in an effort to extract unwarranted payments from Plaintiffs;

(xii) unjustifiably ceasing construction of the Residence, and

(xii) [*sic*] unjustifiably terminating subcontractors that attempted to complete their respective scope of work.

(Doc. #84-3, ¶ 54.)  The Amended Complaint also alleged that the Doppelts "incurred damages in having to complete the scope of work under the contract in amounts over and above the anticipated contract amount." (Id., ¶¶ 59, 60.)  The Notice of Claim,

incorporated into the Amended Complaint, set forth in detail the alleged construction defects attributed to KJIMS.

KJIMS relies upon the allegations of paragraphs 27, 32, and 39 of the Doppelt Action's "Underlying Complaints" to support its position that "property damage" was sufficiently alleged. (Doc. #104, p. 15.) None of these paragraphs, in either the original Complaint or the Amended Complaint, address the matters asserted by KJIMS. Rather, the numbered paragraphs refer to allegations in the Notice of Claim. KJIMS also relies upon another eleven of the eighty-six defects identified in the Notice of Claim (Doc. #97-1, ¶¶ 6, 8, 15, 25, 26, 31, 34, 35, 43, 65, 69). (Doc. #104, pp. 14-15.) But none of these paragraphs allege damages which fall within the CGL Policy's definition of "property damage" even under the "fairly and potentially" standard.

A claim for the cost of repairing or removing defective work is not a claim for property damage, while a claim for the costs of repairing damage caused by the defective work is a claim for "property damage." J.S.U.B., 979 So. 2d at 889. There is no property damage "[i]f there is no damage beyond the faulty workmanship," unless the faulty workmanship has damaged some "otherwise nondefective" component of the project. Id. "Moreover, if a subcontractor is hired to install a project component and, by virtue of his faulty workmanship, installs a defective component, then the cost to repair and replace the

defective component is not 'property damage.'" Auchter Co., 673 F.3d at 1306 (citing Pozzi, 984 So. at 1241). "Conclusory 'buzz words' unsupported by factual allegations are not sufficient to trigger coverage." State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004) (citing Amerisure Ins. Co. v. Gold Coast Marine Distributors, Inc., 771 So. 2d 579, 580-81 (4th DCA 2000)).

All of the paragraphs cited by KJIMS assert a claim for the costs of repairing or completing defective work, and none seek damages injuries caused by the defects. The Notice of Claim purports to set forth "the claimed construction defects resulting from work performed under the terms of the Cost Plus Contract (the "Defects")." (Doc. #97-1, p. 49.) None of the paragraphs relied upon by KJIMS even suggests that the Doppelts were asserting a claim for damages caused to anything other than KJIMS breaches of contract for its or its subcontractors conduct to the construction of the residence itself. There are no factual allegations of damage beyond the faulty workmanship or defective work which damaged otherwise non-defective components of the project. Rather, the Notice of Claim sought solely the costs of repairing and replacing the actual defects in construction. The Court finds that KJIMS has not proven that the Doppelt Amended Complaint, including Attachment B, fairly and potentially bring the suit

within the CGL Policies definition of "property damage."
Therefore, Southern-Owners did not have a duty to defend KJIMS.

### (e) Occurrence

The Insuring Agreement requires that the property damage be
caused by an occurrence, (Doc. #97-4, p. 47) which is defined as
an accident, (id., Definitions, ¶ 14), which in turn means
unexpected or unintended, and encompasses not only "accidental
events" but also injuries or damages neither expected nor intended
from the standpoint of the insured. CTC Dev. Corp., 720 So. 2d
at 1076; Dimmitt Chevrolet, Inc., 636 So. 2d at 704. The
allegations of the Amended Complaint in the Doppelt action assert
that the alleged construction defects were neither expected nor
intended from KJIMS's standpoint. The Court finds that KJIMS has
proven that the Doppelt Amended Complaint fairly and potentially
brings the suit within the CGL Policies definition of "occurrence"
but for the lack of "property damage."

### (f) Suit

The Insuring Agreement states that Southern-Owners has a
"right and duty to defend the insured against any 'suit' seeking"
such damages. (Doc. # 97-4, p. 47.)  "Suit" is defined as: "a
civil proceeding in which damages because of . . . 'property
damage'. . . to which this insurance applies are alleged." (Id.,
¶ 21.) The Doppelt Action would clearly be such a "suit" but for
the absence of "property damage."

In sum, the Court finds that KJIMS has not proven that the Doppelt Amended Complaint, including Attachment B, fairly and potentially brought the suit within the CGL Policies definition of "property damage." Since the existence of such allegations of "property damage" was necessary for a coverage obligation, Southern-Owners did not have a duty to defend KJIMS in the Doppelt Action. Because the Court determines that the Doppelt Action involved no "property damage," the Court need not determine whether any CGL Policies exclusion applied. Auchter Co., 673 F.3d at 1309. Because there was no duty to defend, as a matter of law there can be no duty to indemnify. Trailer Bridge v. Illinois Nat. Ins. Co., 657 F.3d 1135, 1146 (11th Cir. 2011).

### III.

Following remand, the Eleventh Circuit transferred KJIMS's Application for Appellate Attorneys' Fees to this Court "for its consideration." (Doc. #81.) KJIMS contends that it is entitled to reasonable attorney's fees in the amount of $54,621 pursuant to Florida Statutes § 627.428(1). Section 627.428(1) provides that in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall award a reasonable sum as attorney's fees for the attorneys prosecuting the suit on behalf of the prevailing party. KJIMS concedes in the briefing that it is conditionally entitled to the attorney's fees, pending the resolution of the duty to defend issue. (Doc. #81, p. 68.)

Southern-Owners opposes an award of attorney's fees primarily on the ground that MAC has not prevailed, as required for an award of fees under § 627.428.

The Eleventh Circuit has explained that "because section 627.428 is in the nature of a penalty against an insurer who wrongfully refuses to pay a legitimate claim, we strictly construe its language . . . and the statute authorizes the recovery of attorney's fees from the insurer only when the insurer has wrongfully withheld payment of the proceeds of the policy." Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co., Ltd., 254 F.3d 987, 1010 (11th Cir. 2001).

Here, KJIMS did not prevail on the duty to defend issue. Because the Court has declared that Southern-Owners owed no duty to defend, and therefore no proceeds are due under the Policy, the request for appellate attorney's fees pursuant to Florida Statutes § 627.428 is denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Southern-Owners' Third Motion for Summary Judgment (Doc. #103) is **GRANTED IN PART** and MAC Contractors of Florida's Motion for Partial Summary Judgment as to the Duty to Defend (Doc. #104) is **DENIED**.

2. It is hereby declared that Southern-Owners Insurance Company did not owe a duty to defend MAC Contractors of Florida,

LLC (d/b/a KJIMS Construction) in the matter of <u>Doppelt et al. v.</u> <u>MAC Contractors of Florida, LLC d/b/a KJIMS Construction</u>, No. 2016-CA-1530. The request for additional and alternative relief is denied as moot.

3. Judgment is entered in favor of Southern-Owners Insurance Company and against MAC Contractors of Florida, LLC d/b/a KJIMS Construction.

4. MAC Contractor's Application for Appellate Attorneys' Fees (Doc. #81) is **DENIED**.

5. The Clerk is directed to terminate all pending deadlines and motions, enter judgment accordingly, and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this 29th day of January, 2020.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record