UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SOUTHERN-OWNERS INSURANCE COMPANY,

    Plaintiff,

v.   Case No: 2:18-cv-21-JES-MRM

MAC CONTRACTORS OF FLORIDA, LLC, PAUL S. DOPPELT, Trustee of Paul S. Doppelt Revocable Trust dated 12/08/90, and DEBORAH A. DOPPELT, Trustee of Deborah A. Doppelt Revocable Trust dated 12/08/90,

    Defendants.

## OPINION AND ORDER

This matter comes before the Court on defendant MAC Contractors of Florida, LLC's Motion for Summary Judgment (Doc. #134) and plaintiff Southern-Owners Insurance Company's Fourth Motion for Summary Judgment (Doc. #135). Plaintiff and defendant each filed a Response in Opposition (Docs. #140, #141) to the other's motion, and both also filed Replies (Docs. #142, #143). Defendant also filed a Notice of Supplemental Authority (Doc. #148). The Court heard oral argument on March 21, 2023. (Doc. #154.)

**I.**

There are two operative pleadings in this case. In the Second Amended Complaint For Declaratory Judgment (Doc. #84), Southern-Owners Insurance Company (Southern-Owners) seeks declarations that it has no duty to defend and no duty to indemnify defendants in connection with a since-resolved state court lawsuit.[1] Defendants filed an Amended Counterclaim [for Declaratory Relief] (Doc. #132) which asserts that Southern-Owners breached two insurance policies by not providing a defense in a certain state court case and not indemnifying defendants.

Two prior motions for summary judgment filed by Southern-Owners have been granted by the Court and reversed by the Eleventh Circuit Court of Appeals. See S.-Owners Ins. Co. v. MAC Contractors of Fla., LLC, 768 F. App'x 970 (11th Cir. 2019) and S.-Owners Ins. Co. v. MAC Contractors of Fla., LLC, 819 F. App'x 877 (11th Cir. 2020). The second appellate decision sets forth the basic background facts:

> On December 19, 2014, KJIMS [MAC Contractors] entered into a contract with Paul and Deborah Doppelt, as trustees of their respective trusts, to serve as the general contractor for the construction of a custom residence in Marco Island, Florida. An exhibit to the

---

[1] The state court lawsuit was resolved pursuant to a settlement agreement for $70,000 and was dismissed in September 2019.

2

contract outlined various specifications for the residence.

Problems arose between KJIMS and the Doppelts after construction began, and KJIMS eventually left the job site before completing the project and before the issuance of a certificate of occupancy. After serving KJIMS with a notice of defects, see Fla. Stat. § 558.004, the Doppelts sued KJIMS in state court in August 2016. In the operative amended complaint, they alleged, among other things, that KJIMS and its subcontractors had left the residence "replete with construction defects."

In the Doppelts' notice of defects, which the amended complaint incorporated by reference, the claimed "defects" included the following: "[r]epair loose, broken or chipped pavers in driveway and walkways and install edge restraints"; "[r]epair underside of lap siding – inconsistent paint finish at bottom of boards"; "[r]epair chatter marks on T&G ceilings"; "repair damage to all exterior doors" and "[r]epair all pocket doors"; "[r]eplace damaged top stair tread"; "[r]emedy damage to hardwood floors, includ[ing] damage resulting from use of blue tape and dirt"; "[r]epair metal roof dents, scratches and hems"; "[c]lean wall and ceiling paint on cabinets"; "[r]emove paint spots on baseboards throughout the house"; "[r]emedy scratches in granite"; and "[p]atch and paint all holes in ceilings and walls and twin holes in exterior hardi plank." The Doppelts sought to recover damages for "having to repair and remediate all defective work performed by KJIMS," among other things.

At all relevant times, KJIMS was insured by a commercial general liability ("CGL") insurance policy issued by Southern-Owners. [] KJIMS tendered the Doppelts' lawsuit to Southern-Owners, which initially agreed to defend KJIMS but later withdrew the defense and filed this lawsuit in November 2017

3

>seeking a declaration that it owed no duty to defend or indemnify KJIMS.

S.-Owners Ins. Co., 819 F. App'x at 878. The Eleventh Circuit then summarized the first set of summary judgment motions and their results:

>On cross-motions, the district court granted summary judgment to Southern-Owners. The court concluded that Southern-Owners owed KJIMS no duty to defend against the Doppelts' lawsuit based on a policy exclusion for "Damage to Your Work." We vacated that decision on appeal, concluding that the underlying complaint could fairly be construed to allege damages that fell outside the exclusion. See Southern-Owners Ins. Co. v. MAC Contractors of Fla., LLC, 768 F. App'x 970, 973-74 (11th Cir. 2019). In remanding, we noted that the court had not addressed whether the Doppelts alleged "property damage" within the meaning of the CGL policy, though we declined to address that issue for the first time on appeal. Id.
>
>On remand, the district court again granted summary judgment to Southern-Owners, this time concluding that the underlying complaint did not allege "property damage" within the meaning of the CGL policy. The court reasoned that the underlying complaint did not allege any damage beyond the faulty workmanship or defective work, which did not qualify as "property damage" under Florida law.

Id. at 878-79. The Eleventh Circuit found this to be error, stating:

>. . . we conclude that the underlying operative complaint can fairly be construed to allege "property damage" within the meaning of the CGL policy and Florida law. Accordingly, the district court erred in granting summary judgment to Southern-Owners on this basis.

4

<u>Id.</u> at 882. The Eleventh Circuit continued:

> In the alternative, Southern-Owners argues that, even if "property damage" was alleged, we should still affirm the judgment in its favor based on several policy exclusions which, in its view, clearly preclude coverage. We have already concluded that one of these exclusions — a completed-operations hazard exclusion — did not eliminate the duty to defend. <u>Southern-Owners</u>, 768 F. App'x at 973-74.
>
> With regard to exclusions j(6) and j(7) of the policy, the other exclusions on which Southern-Owners relies, these provisions exclude coverage for "property damage" to the following:
>
> (6) That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (7) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> Southern-Owners asserts that the phrase "[t]hat particular part" refers to the "entire project at issue (i.e. the Subject Property in its entirety)," so in its view, these exclusions apply to any damage caused by defective work performed by or on behalf of KJIMS on the residence. KJIMS, for its part, points to authority indicating that these exclusions would not apply to property damage that occurred during operations on the property as a whole "but at a moment in time when neither KJIMS nor its subcontractors specifically worked on" the "particular part of [the] property" that was damaged or must be restored, repaired, or replaced. <u>See</u> Br. of Appellee at 15-17. The district court did not reach this issue, however, and we decline to

> address it for the first time on appeal, "preferring that the district court address it in the first instance." Beavers v. Am. Cast Iron Pipe Co., 975 F.2d 792, 800 (11th Cir. 1992).

Id. at 882-83.

## II.

At the beginning of the oral arguments, the parties agreed that there is no longer a case or controversy with respect to the duty to indemnify. The underlying state lawsuit has been settled, and defendants have withdrawn their claim for indemnification of the $70,000 settlement. All outstanding issues regarding indemnification are therefore moot.

The remaining focus of the current set of cross-motions for summary judgment is on the duty to defend. In the first appeal, the Eleventh Circuit outlined the Florida duty to defend law:

> For the duty to defend to arise, the underlying allegations must "fairly bring the case within the scope of coverage." State Farm Fire & Cas. Co. v. Tippett, 864 So. 2d 31, 35-36 (Fla. 4th DCA 2003). "If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit." Trizec Props., Inc. v. Biltmore Constr. Co., Inc., 767 F.2d 810, 811-12 (11th Cir. 1985). Any doubt about whether the insurer owes a duty to defend must be resolved against the insurer and in favor of the insured. Id. at 812. Furthermore, "[b]ecause they tend to limit or avoid liability, exclusionary clauses are construed more strictly than coverage clauses." Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co., 76 So. 3d 20,

6

> 23 (Fla. 1st DCA 2011). Nevertheless, if the complaint clearly shows "the applicability of a policy exclusion, the insurer has no duty to defend." Keen v. Fla. Sheriffs' Self-Insurance Fund, 962 So. 2d 1021, 1024 (Fla. 4th DCA 2007).

S.-Owners Ins. Co., 768 F. App'x at 971–72.  In the second appeal, the Eleventh Circuit noted the potential for coverage and the resulting duty to defend:

> Here, the language of the underlying complaint, "at least marginally and by reasonable implication, could be construed" to create potential coverage under the policy. Trizec Props., 767 F.2d at 813. The operative amended complaint alleged that KJIMS used subcontractors for work on the residence and that the residence was "replete with construction defects" and various damage. It did not further allege which subcontractors performed which work or how the damage occurred. Given these ambiguities, the complaint's allegations are broad enough to allow KJIMS to prove that one subcontractor negligently damaged nondefective work performed by another subcontractor. See id. If KJIMS could establish that at least some of the damage arose in this way, there would be "damage apart from the defective work itself" and therefore "property damage." See Carithers [v. Mid-Continet Cas Co., 782 F.3d 1240, 1250–51 (11th Cir. 2015)]. Because there is a potential for coverage, the duty to defend was triggered. See Trizec Props., 767 F.2d at 813.

S.-Owners Ins. Co., 819 F. App'x at 882.  See also Westchester Gen. Hosp., Inc. v. Evanston Ins. Co., 48 F.4th 1298, 1302 (11th Cir. 2022); Travelers Indem. Co. of Connecticut v. Richard Mckenzie & Sons, Inc., 10 F.4th 1255, 1261 (11th Cir. 2021).

7

### III.

The insuring agreement of the Policy[2] provides, in pertinent part, that Southern-Owners "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." (Doc. #84-1, pp. 46, 65, 132.) As discussed above, the Eleventh Circuit has already decided that Southern-Owners had a duty to defend unless one or more of the remaining exclusions preclude coverage.

Southern-Owners argues that three applicable Policy exclusions[3] cumulatively cover all the damages alleged in the Underlying Complaint.[4] "When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation. Exclusionary clauses are generally disfavored."

---

[2] The Court will use the singular "Policy" since the relevant language is the same in each of the two Commercial General Liability (CGL) policies.

[3] At oral argument counsel for Southern-Owners acknowledged that there are no other unresolved exclusions which Southern-Owners is asserting applies to this case.

[4] The parties seem to quibble over what constitutes the state court "underlying complaint" which is to be examined. The undersigned has previously held that the pertinent "underlying complaint" is the Amended Complaint, which includes the statutory notice of defects. See Doc. #111, pp. 15-17. This remains the Court's view.

Hartford Acc. & Indem. Co. v. Beaver, 466 F.3d 1289, 1296 (11th Cir. 2006) (quoting Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001) (internal citations omitted). Southern-Owners acknowledges that it bears this burden of proof. (Doc. #135, p. 11.)

Southern-Owners argues that any reasonable interpretation of the allegations in the Underlying Complaint establish they are "cast solely and entirety" within the cumulative scope of the three Policy exclusions. (Id.) Southern-Owners asserts that to the extent the Underlying Complaint involves a claim related to completed operations, any work on the Subject Property entirely meets the definition of "your work" in Exclusion 1. Southern-Owners further asserts that to the extent the Underlying Complaint advances any claim related to damages occurring during ongoing operations, such damages are excluded from coverage by Exclusions j(6) and j(7). (Id., pp. 8-9.) Thus, according to Southern-Owners, the cumulative effect of these exclusions is to preclude coverage and the duty to defend.

KJIMS does not dispute that it is permissible to use multiple exclusions to defeat a duty to defend if the cumulative effect satisfies the appropriate legal standard. KJIMS argues, however, that the evidence does not establish that the allegations in the

Underlying Complaint are "cast solely and entirety" within the cumulative scope of the three exclusions.

**A.  Your Work Exclusion**

Exclusion 1 states that insurance coverage does not apply to "'property damage'" to "'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" (Doc. #84-1, p. 51.)  It is the law of the case that this exclusion does not apply to property damage caused during ongoing operations. S.-Owners Ins. Co., 768 F. App'x at 973 ("For its part, Southern-Owners agrees with KJIMS that the Your Work exclusion does not apply to property damage caused during ongoing operations.")  The Eleventh Circuit held: "Construing the Your Work exclusion narrowly and resolving all doubts in favor of KJIMS, we conclude that the underlying allegations can fairly be construed to allege damages during ongoing operations."  Id. at 973 (citations omitted).

Nonetheless, in its current motion, Southern-Owners asserts that any work which involves a damage claim relate to completed operations on the Subject Property meets the definition of "your work" in Exclusion 1.  Therefore, Southern-Owners argues, there is no duty to defend that portion of the claim relating to defective work by subcontractors such as roofs, windows, and doors.  (Doc. #135, pp. 11-12.).  Southern-Owners relies heavily on J.B.D. Const.

10

Inc. v. Mid-Continent Cas. Co., 571 F. App'x 918 (11th Cir. 2014), an unpublished decision which found there was a duty to defend. (Doc. #135, pp. 11-13.)

Southern-Owners argues that the portion of the Court's prior determination that the 'your work' exclusion entirely precludes coverage for completed operations remains valid. (Id., pp. 13-14.) This seems unlikely.  The Court has twice found that the "your work" exclusion precluded coverage and a duty to defend, and the Eleventh Circuit has twice vacated these decisions.  In any event, viewing the Underlying Complaint in the manner dictated by the Eleventh Circuit, the Court finds that the allegations pertaining to both ongoing operations and completed operations are not "cast solely and entirety" within the "your work" exclusion in the Policy.  Southern-Owners' request for summary judgment on this ground is therefore denied.

### B. "That Particular Part" Exclusions

There are two exclusions under the paragraph "j. Damage to Property" which Southern-Owners asserts preclude a duty to defend. These exclusions exclude coverage of certain "property damage[5]":

---

[5] "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

11

> (6) That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (7) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(Doc. #84-1, p. 50.)  Southern-Owners argues these exclusions apply because the Underlying Complaint states that property damage began while MAC Contractors was performing operations and the claimed damages are only for the repair, removal, or replacement of MAC Contractors' work.

"[I]f a subcontractor is hired to install a project component and, by virtue of his faulty workmanship, installs a defective component, then the cost to repair and replace the defective component is not 'property damage.'" S.-Owners Ins. Co, 819 F. App'x at 880 (citing Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So. 2d 1241, 1306 (Fla. 2008)).  On the other hand, "a claim for the costs of repairing damage to other property caused by defective work does qualify as a claim for 'property damage.'"  J.B.D.

---

> b. Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

(Doc. #84-1, Exh. A, p. 65.)

Const., Inc. v. Mid-Continent Cas. Co., 571 F. App'x 918, 923 (11th Cir. 2014) (citation omitted).

> "Property damage occurs when the damage happens, not when the damage is discovered or discoverable." Carithers v. Mid-Continent Cas. Co., 782 F.3d 1240, 1247 (11th Cir. 2015) (interpreting nearly identical policy language). And where the underlying allegations, even though silent as to the timing of damages, can be reasonably construed to allege property damage that occurred during the policy period, "there is a potential for coverage." Trizec Props., 767 F.2d at 813.

S.-Owners Ins. Co., 768 F. App'x at 973.

The exclusions are "triggered only when the faulty work and the damage are to the same part of the property." Westfield Ins. Co. v. Miller Architects & Builders, 949 F.3d 403, 405 (8th Cir. 2020). "The potential for coverage is triggered when an 'occurrence' results in 'property damage.' There is no requirement that the damages 'manifest' themselves during the policy period." Trizec Props., Inc. v. Biltmore Const. Co., 767 F.2d 810, 813 (11th Cir. 1985). "Here, although the underlying allegations are silent as to the timing of the damages, the allegations can be reasonably construed to allege damages that occurred during ongoing operations." S.-Owners Ins. Co., 768 F. App'x at 973.

Under paragraph j7, property damage to that "particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it" is excluded from

13

coverage. Paragraph 7 does not apply to "property damage included in the products-completed operations hazard", (Doc. #84-1, pp. 50-51), which excludes work that has not yet been completed or abandoned (Id., pp. 64-65).

The defects listed in the Underlying Complaint run the gambit from beams in the great room ceiling which are not aligned with columns below on the balcony side and remedying damage to hardwood floors to repairing metal roof dents, scratches, and hems. (Doc. #132-7, Exh. A.) The Amended Complaint alleges that KJIMS terminated subcontractors "that continued their scope of work at the Property while demanding payment from Plaintiffs for Work not completed, Work not performed in accord with specifications, plans and/or for Work yet to be performed – a demand inconsistent with the plain language of the Cost-Plus Contract." (Doc. #132-8, p. 8, ¶ 37.) The allegations in the Amended Complaint include that KJIMS "failed to achieve substantial completion", and that KJIMS effectively shut down construction for the 6 weeks preceding the filing of the Complaint. (Id., ¶¶ 41-42.) The Amended Complaint also alleges a failure to comply with "assurances of remediation particularly with respect to the damage to wood floors and the metal roof". (Id., ¶ 54.) The implication is that the work was otherwise complete but in need of repair. The Court cannot say

that these allegations are necessarily within the scope of the allegations identified by Southern-Owners.

Accordingly, it is now

**ORDERED**:

1. MAC Contractors of Florida, LLC's Motion for Summary Judgment (Doc. #134) is **GRANTED** as to the duty to defend and **DENIED** as moot as to the duty to indemnify.

2. Southern-Owners Insurance Company's Fourth Motion for Summary Judgment (Doc. #135) is **DENIED** as to the duty to defend and **DENIED** as moot as to the duty to indemnify. The declaratory relief sought in Doc. #84 is **DENIED**.

3. The Clerk of Court shall enter judgment accordingly declaring that Southern-Owners Insurance Company had a duty to defend MAC Contractors of Florida, LLC, d/b/a KJIMS in the state court lawsuit filed against it by Paul and Deborah Doppelt, as trustees.

4. The Clerk is further directed to terminate all pending motions and deadlines, and to close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __30th__ day of March 2023.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record

15